**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

CECILY MERCER,                          )
                                        )
                Plaintiff,              )
                                        )
                v.                      )      Civil No. 2014-50
                                        )
GOVERNMENT OF THE VIRGIN ISLANDS )
DEPARTMENT OF EDUCATION;                )
CLARISSA WARRINGTON; and DONNA          )
FRETT-GREGORY,                          )
                                        )
                Defendants.             )
_____)

ATTORNEYS:

**Pedro K. Williams, Esq.**
Law Office of Pedro K. Willaims
St. Thomas, U.S.V.I.
        *For Cecily Mercer,*

**Ariel Marie Smith-Francois, AAG**
Virgin Islands Department of Justice
St. Thomas, U.S.V.I.
        *For Government of the Virgin Islands Department of
Education; Clarissa Warrington; and Donna Frett-Gregory.*

## MEMORANDUM OPINION

**GÓMEZ, J.**

A bench trial on this matter was held on January 20 and
January 21, 2016. The Court, having considered the parties'
various pleadings, witness testimony, exhibits, and the
arguments of counsel, now enters Judgment pursuant to Rule 52(a)
of the Federal Rules of Civil Procedure.

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 2

## I.     FACTUAL AND PROCEDURAL HISTORY

Cecily Mercer was employed by the Government of the Virgin Islands, Department of Education ("DOE") on February 1, 2010. At that time, Donna Frett-Gregory ("Gregory"), the Commissioner of the DOE, was Mercer's supervisor. Clarissa Warrington ("Warrington") was a deputy commissioner of the DOE and Mercer's supervisor from June, 2013 until Mercer's termination.[1]

Mercer was employed as a Compliance and Resolution Manager at the DOE. Mercer's duties included reviewing operations, departments, and programs in the DOE and determining whether they were in compliance with federal and local regulations. When Mercer identified problems, she was responsible for reporting them to her supervisors.

In November, 2011, Mercer became pregnant. Mercer had a difficult pregnancy. She developed complications. From June 15, 2012, to July 26, 2012, Mercer was allowed to work from home. After July 26, 2012, Mercer went on maternity leave. On July 31, 2012, she delivered her child. Mercer's child was stillborn.

Mercer began to suffer several health issues she attributed to her pregnancy and delivery. Mercer's doctor initially recommended 12-weeks post-partum leave for Mercer to recover

---

[1] Collectively, the DOE, Gregory, and Warrington will be referred to as the "DOE Defendants."

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 3

from her delivery. Considering Mercer's additional mental and
health problems, Mercer's doctor recommended an additional month
of leave, extending into late December, 2012.

In October, 2012, Gregory informed Mercer that the note
from her doctor was not valid. To continue to be paid, Gregory
told her, Mercer would need to bring a new note. The note
recommending leave until December, 2012 was still in effect.

In December, 2012, Mercer unsuccessfully attempted to
contact Gregory to discuss returning to work. Mercer sent
Gregory an email indicating that she could not return to work in
January, but "would like to meet to discuss several options."
(ECF No. 140, Exh. 20.) Mercer never heard back from Gregory.

Mercer's psychologist recommended extending Mercer's leave.
Subsequently, Mercer's doctor recommended leave until March 1,
2013, to treat her back pain. Mercer returned to work on March
4, 2013. She continued to work under her old title and salary.

When Mercer returned to work she found the work environment
"very tense." (ECF No. 174 at 36:11-13.) She "wasn't getting any
work assigned to [her]," and e-mails she sent trying to find
work went unanswered. (*Id.* at 36:13-17.)

On March 13, 2013, Mercer was told to work with the third-
party fiduciary responsible for the DOE's fiscal administration.
Mercer discovered that items valued over $1.5 million were

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 4

unaccounted. (*Id.* at 9-13.) Mercer understood that the United States could withdraw DOE funding under such circumstances. On August 28, 2016, Mercer emailed a report to Gregory, Warrington, and other DOE personnel.

On August 26, 2016, a doctor treating Mercer for back pain recommended leave until September 12, 2012. The leave was extended to September 18, 2012. Mercer emailed Warrington saying she could work from home. Mercer did not receive a response.

When Mercer returned from leave, she alleges that her work environment had become "even more hostile." (*Id.* at 54:19.) On October 1, 2013, Gregory told Mercer it was difficult to give Mercer tasks because of Mercer's frequent absences. Gregory said the governor was planning lay-offs, and she "would hate to have to put [Mercer's] name on the list of people to be . . . laid off." (*Id.* at. 56:5-6.)

After that meeting, Mercer was not included in several other meetings. Mercer also felt she was not getting information from other employees. Additionally, tasks and duties that Mercer had previously been responsible for were assigned to other employees.

On one occasion, Mercer requested permission to take a week long training course. Though another employee in the office was

allowed to take the entire course, Warrington only gave Mercer

permission to take one day of the course.

A meeting was scheduled for the day of Mercer's class.

Mercer went to the meeting after her class and knocked on the

door. Mercer heard Warrington say, "Don't answer. It's Mercer."

(Id. at 59:7.) Warrington told Mercer the meeting was over, but

"everyone was still at the table, still sitting with their books

open like the meeting was ongoing." (Id. at 59:14-16.)

In December, 2013, Mercer met with Warrington.

Subsequently, Warrington gave a memorandum to Mercer. The

memorandum indicated that, because of Mercer's absences, it was

difficult to assign tasks to Mercer. On February 3, 2014, Mercer

was fired. Mercer received a letter from Warrington explaining

that Mercer's termination was the result of a reduction in

federal grants.

Subsequently, Mercer filed a complaint in this Court. She

then amended her complaint. The First Amended Complaint alleges

eight counts. Count One alleges a violation of the Virgin

Islands Whistle Blowers Act. Count Two alleges a Title VII

retaliation claim. Count Three alleges a Title VII and local law

hostile work environment claim. Count Four alleges a Title VII

and local law harassment claim. Count Five alleges a Title VII

and local law discrimination claim. Count Six alleges a wrongful

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 6

termination claim. Count Seven alleges a negligent infliction of emotional distress claim. Count Eight alleges an intentional infliction of emotional distress claim.

A bench trial was held for all claims on January 20-21, 2016.

## II.  DISCUSSION

### A. Count One: Virgin Islands Whistleblowers Protection Act

The Virgin Islands Whistleblowers Protection Act ("WPA") provides that:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this territory or the United States to a public body unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action.

10 V.I.C. § 122. "To establish a prima facie case, a whistleblower must show that (1) he or she engaged in conduct protected under the act; (2) the employer took adverse action against the employee; and (3) there was a causal connection between the protected conduct and the adverse action." *Johnson*

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 7

*v. Gov't of Virgin Islands*, No. CIV. 798/1993, 1996 WL 663976, at *2 (Terr. V.I. Nov. 6, 1996).

Mercer argues that she engaged in protected conduct when she delivered her August 28, 2013, warehouse assessment report to Gregory and Warrington.

In *Hodge v. Superior Court of Virgin Islands*, No. CIV.A.07-87, 2009 WL 2996507 (D.V.I. Sept. 11, 2009), this Court had occasion to consider whether internal reports of an employee charged with creating such reports was protected conduct. In that case, the plaintiff, Verne A. Hodge, Jr. ("Hodge") was employed by the Superior Court of the Virgin Islands as Assistant General Counsel. *Id.* at *1 (D.V.I. Sept. 11, 2009). In that capacity, he submitted a memorandum to the Presiding Judge of the Superior Court. *Id.* at *5. In the memorandum, Hodge provided the Presiding Judge "advice on what he perceived to be the Superior Court's poor practices, which in his view created general concerns about the Court's liability exposure." *Id.*

This Court held that the preparation of the internal report was not conduct protected under the WPA. It reasoned that:

> An internal report of wrongdoing might satisfy the
> protected conduct requirement in some cases, but
> courts have held the employee must make it clear to
> the employer the employee's actions go beyond the
> employee's assigned tasks and job duties. *See
> Hutchins v. Wilentz, Goldman & Spitzer,* 253 F.3d
> 176, 193 (3d Cir.2001) (holding a paralegal did not

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 8

> engage in the protected conduct under the False
> Claims Act where the paralegal's memorandum did not
> put his employer on notice a False Claims Act suit
> was a distinct possibility); *Skare v. Extendicare*
> *Health Serv., Inc.,* 515 F.3d 836, 841 (8th Cir.2008)
> (deciding a nurse did not become a whistleblower by
> merely exercising her duties to report compliance
> problems at her facilities). Hodge fails to satisfy
> this heightened burden for an actionable internal
> report.
>
> Hodge's November 30, 2006 memo was an internal
> complaint, prepared during the ordinary course and
> scope of his duties as Assistant General Counsel. It
> was exactly the type of activity he was required to
> perform in fulfilling his duties as legal advisor to
> the Court. He never made it clear to the Superior
> Court his complaints went beyond grumbling about
> perceived infractions of his authority and his
> opinions on proper internal procedures. A reasonable
> reader of his report would not be put on notice of
> potential litigation against the Superior Court by
> identified persons for alleged constitutional due
> process violations, or his intent to investigate and
> pursue any such claims against the Court.

*Id.* at *5. On appeal, the Third Circuit affirmed for

"substantially the reasons given by the District Court." *Hodge*

*v. Superior Court of Virgin Islands*, 404 F. App'x 641, 642 (3d

Cir. 2010).

Here, Mercer was a "Compliance and Resolution Manager" for

the DOE. Her responsibilities in that position included

reviewing DOE "programs and operations . . . to ensure that they

were in compliance with both the federal regulations and the

local regulations." (ECF No. 174 10:5-8.) The warehouse

assessment report arose out of a case that was specifically

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 9

assigned to Mercer. Moreover, preparing such reports and providing them to her supervisors fell squarely within the duties of her position. Mercer wrote several emails about the issues with the third-party fiduciary before and after Mercer sent the warehouse assessment report. None of Mercer's reports or emails were disseminated outside the DOE. Moreover, there is nothing to suggest that a reasonable reader of her report or emails would have been on notice of potential litigation. In sum, Mercer has failed to prove that she was engaged in protected conduct. Accordingly, the DOE Defendants are entitled to judgment on Count One.

**B. Count Two: Retaliation**

In Count Two, Mercer alleges a violation of Title VII. Specifically, she alleges that the DOE retaliated against her because she authored a critical internal report. Mercer moved to voluntarily withdraw Count Two. At trial, the Court granted her motion, and dismissed Count Two.

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 10

### C. Counts Three, Four, and Five--Pregnancy Discrimination Claims

#### 1. Discrimination in Violation of Local Law--Applicable Law and Standard for Analysis

##### a. Statutory Reach and Effect of 10 V.I.C. §§ 3 and 64

As a preliminary matter, the Court must address an issue related to the local claims asserted in Counts Three, Four, and Five that the parties have failed to address in their briefs. Counts Three, Four, and Five are each linked to Mercer's treatment as a pregnant woman and a woman suffering from pregnancy-related medical conditions. In Count Three, a claim for hostile work environment, Mercer asserts that her local claim is brought pursuant to 10 V.I.C. § 3 ("Section 3"). In Count Four, a claim for pregnancy harassment, and Count Five, a claim for pregnancy discrimination, she asserts that her local claims are brought pursuant to 10 V.I.C. § 64 ("Section 64"). It is not, however, clear whether either statute permits her claims.

Section 64, in pertinent part, provides:

(1) It shall be an unlawful discriminatory practice:

(a) For an employer, because of age, race, creed, color, national origin, place of birth, sex, disability and/or political affiliation of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 11

> discriminate against such individual in compensation
> or in terms, conditions or privileges of employment.

10 V.I.C. § 64.

The Supreme Court of the United States has construed an unadorned prohibition on sex discrimination to not prohibit discrimination based on pregnancy. *See Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 134-35 (1976). Section 64 similarly is an unadorned prohibition on sex discrimination. Thus, Section 64 does not prohibit discrimination based on pregnancy.

Section 3 prohibits discrimination based on "race, creed, color, or national origin." It does not protect against discrimination based on sex, pregnancy, childbirth, or related conditions. *See* 10 V.I.C. § 3.

Moreover, subsequent amendments to other Virgin Islands civil rights statutes indicate that Section 64 does not prohibit discrimination related to pregnancy. To begin, Section 64 was originally adopted in 1974. *See* Act No. 3519, Sess. L. 1974 (Feb. 15, 1974). When Section 64 became law, another section of the Virgin Islands Code--24 V.I.C. § 451 ("Section 451")-- already prohibited discrimination based on sex. *See* Act No. 1192, Sess. L. 1964 (April 8, 1964). Significantly, in 1984, Section 451 was amended to include a new subsection (b). See Act No. 4942, Sess. L. 1984 (June 1, 1984). That new subsection

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 12

provided that "because of sex" or "as to sex" included "because of or as to pregnancy, childbirth, or related medical conditions." *Id.* No such amendment was made to Section 64. As such, the Court does not interpret Section 64 to prohibit discrimination based on pregnancy, childbirth, or related medical conditions.

Therefore, neither of the two local statutes cited to in the complaint permit a cause of action based on pregnancy, childbirth, or related medical conditions. Nevertheless, because the DOE defendants were well aware of the factual underpinning of Mercer's claims and have not contested the statutory basis for Mercer's local law claims, the Court will determine whether Mercer is entitled to judgment under Section 451. *Cf. Walters v. President & Fellows of Harvard Coll.*, 616 F. Supp. 471, 473 (D. Mass. 1985) (holding that a citation to the wrong section of a state statute in the complaint, "where sufficient notice of the factual basis of the claim has been stated, would not support a motion to dismiss for failure to state a claim much less a motion for summary judgment").

### b. Statutory Reach and Effect of 24 V.I.C. § 451

Prior to 2011, Section 451 provided that

(a) Notwithstanding the provisions of any other law, it shall be unlawful employment practice or unlawful discrimination:

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 13

> (1) For an employer to refuse to hire or employ or to bar or discharge from employment, any individual because of his race, sex, age, religion, color or ancestry, provided that an employer may refuse to hire an individual for good cause relating to the ability of the individual to perform the work in question;

> (2) For an employer to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment because of race, sex, age, religion, color or ancestry;

> (3) For any employer or employment agency to print, circulate or cause to be printed or circulated any statement, advertisement or publication or to use any form of application for employment or to make inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitations, specification or discrimination as to race, sex, age, religion, color or ancestry, unless based on a bona fide occupational qualification as determined by this chapter.

(b) For the purposes of this section, the terms 'because of sex' or 'as to sex' include, but are not limited to:

> (1) because of sexual harassment and;

> (2) because of or as to pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under disability benefit, sick leave, and medical benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 460 of this chapter pertaining to bona fide occupational classifications shall be interpreted to permit otherwise. This subsection shall not require an employer to pay

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 14

> for health insurance benefits for abortion,
> except where the life of the mother would be
> endangered if the fetus were carried to term,
> or except where medical complications have
> arisen from an abortion; provided that nothing
> herein shall preclude an employer from
> providing abortion benefits.

24 V.I.C. § 451 (2010).

In 2011, the Virgin Islands Legislature passed Act Number 7323 ("Act 7323"). Act 7323 provided that Section 451 of the Virgin Islands Code was to be amended as follows:

> (a) By adding a new subsection (a) to read as follows:
>
>> "(a) In addition to other remedies, any person who has been discriminated against as defined in this section may bring an action for compensatory and punitive damages in any court of competent jurisdiction. The court in such action shall award to the plaintiff reasonable attorney's fees and costs of the action, in addition to any judgment in favor of the plaintiff."
>
> (b) In subsection (b)(2), by deleting the last sentence . . . .

2011-2 V.I. Code Ann. Adv. Legis. Serv. 15-51 (LexisNexis).

After the 2011 amendments, Section 451 was codified as follows:

> (a) In addition to other remedies, any person who has been discriminated against as defined in this section may bring an action for compensatory and punitive damages in any court of competent jurisdiction. The court in such action shall award to the plaintiff reasonable attorney's fees and

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 15

> costs of the action, in addition to any judgment in
> favor of the plaintiff.
>
> (b) For the purposes of this section, the terms
> 'because of sex'or 'as to sex'include, but are not
> limited to:
>
>> (1) because of sexual harassment and;
>>
>> (2) because of or as to pregnancy, childbirth,
>> or related medical conditions; and women
>> affected by pregnancy, childbirth, or related
>> medical conditions shall be treated the same
>> for all employment-related purposes, including
>> receipt of benefits under disability benefit,
>> sick leave, and medical benefit programs, as
>> other persons not so affected but similar in
>> their ability or inability to work, and nothing
>> in section 460 of this chapter pertaining to
>> bona fide occupational classifications shall be
>> interpreted to permit otherwise.

24 V.I.C. § 451.

On its face, the codified version of the statute provides a remedy for those who have "been discriminated against as defined in this section" but no longer includes a corresponding definition of "discrimination." No territorial court has analyzed the effect of the post-2011 amendment on Section 451's prohibition on discrimination. Accordingly, the Court must determine how the Virgin Islands Supreme Court would rule on this question of territorial law. *See Roma v. United States*, 344 F.3d 352, 361 (3d Cir. 2003) (explaining that when state's highest court has not interpreted a state law, a federal court

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 16

applying that law must "predict how the [state's highest court] would rule on th[e] question").

When the Virgin Islands Supreme Court construes a local statute, it "look[s] first to the plain meaning of its language and attempt[s] to construe it in a way that would not 'result in injustice or absurd consequences.'" *Percival v. People*, No. S.CT.CRIM. 2013-0090, 2014 WL 3936333, at *4 (V.I. Aug. 12, 2014) (quoting *Brady v. Gov't of the Virgin Islands*, No. S.CT.CIV. 2011-0096, 2012 WL 4098172, at *4 (V.I. Sept. 18, 2012)). "If the language is ambiguous, [the Court] will proceed to examine the legislative history of the statute and its purpose to ascertain if the interpretation was within the Legislature's intent." *Percival v. People*, No. S.CT.CRIM. 2013-0090, 2014 WL 3936333, at *4 (V.I. Aug. 12, 2014) (quoting *Sonson v. People*, No. S.CT.CRIM. 2009-0109, 2013 WL 4812493, at *4 (V.I. Sept. 9, 2013)) (internal quotation marks and alterations omitted). "Furthermore, 'although literal interpretation of a statute is favored, the intention prevails over the letter,' and thus 'no statute should be read literally if such a reading is contrary to its objective.'" *Gilbert v. People of Virgin Islands*, No. 2008-034, 2009 WL 3297267, at *3 (V.I. Oct. 6, 2009) (quoting *Gov't of Virgin Islands v. Knight*, 989 F.2d 619, 626 (3d Cir. 1993)) (alterations omitted).

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 17

The Virgin Islands Code is prima facie evidence of Virgin Islands law. 1 V.I.C. § 11. The session laws of the Legislature of the Virgin Islands, however, constitute legal evidence of the law. 1 V.I.C. §§ 20, 23. Similarly, the United States Code is only prima facie evidence of United States law. 1 U.S.C. § 204(a). The Statutes at Large are "legal evidence of laws." 1 U.S.C. 112.

As the Supreme Court has explained, "the very meaning of 'prima facie' is that the [United States] Code cannot prevail over the Statutes at Large when the two are inconsistent." *Stephan v. United States*, 319 U.S. 423, 426 (1943). Accordingly, when a provision in the United States Code is not consistent with the corresponding provision in a Statute at Large, the Statue at Large controls. *See, e.g.*, *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 378-80 (1958); *Royer's, Inc. v. United States*, 265 F.2d 615, 618 (3d Cir. 1959). The Court finds the same reasoning applies here. Thus, if a session law of the Legislature of the Virgin Islands is inconsistent with a section in the Virgin Islands Code, the session law must control. *Cf. United States v. Ward*, 131 F.3d 335, 340 (3d Cir. 1997) ("The error in the codified version of the Act was not the fault of Congress, but of the codifiers.").

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 18

Act 7323 amended Section 451 "[b]y adding a new subsection (a)." The publishers of the Virgin Islands Code apparently read this as an instruction to entirely remove the old subsection (a) and *replace* it with the new subsection (a). The Act, however, does not explicitly provide for or require this result.

Generally, when the Legislature of the Virgin Islands amends a statute by replacing one subsection with another, it makes this instruction clear. *See, e.g.*, Act No. 6033, Sess. L. 1994 (providing instruction to "delete subsection (c) and add a new subsection (c)"); Act No. 6333, Sess. L. 1999 (providing instruction to "[r]epeal the existing subsection (h), and add new subsection (h)"). Likewise, when the Legislature of the Virgin Islands wishes to add a new subsection and retain the old, it generally makes that instruction clear as well. *See* Act No. 5969, Sess. L. 1994 (providing instruction to "[d]esignate the existing language as subsection (a) and add a new subsection (b)"); Act No. 6635, Sess. L. 2003 (providing instruction to "add a new subsection (a) to read as follows and redesignate the existing subsections accordingly").

In this light, it is not clear from the Legislature's sparse instruction to "add[] a new subsection" whether the amendment was intended to (1) rescind the original subsection; (2) supplement the original subsection; or (3) move and re-

designate the original subsection. Indeed, the publishers are
empowered by the Virgin Islands Code to "[r]enumber and
rearrange sections or parts of sections" in the absence of
explicit instructions, so long as it does "not alter the sense,
meaning or effect of any act." 1 V.I.C. § 14(a)(1). Thus, though
Act 7323 does not explicitly provide for re-designating the
original subsection (a), the Legislature need not have given
this instruction to achieve that result. As such, the Court
finds Act Number 7323's *technical instruction* to the publisher,
taken in isolation, is ambiguous.

The Legislature's broader *intention* in passing Act 7323,
however, is more obvious. Act 7323 provides that "any person who
has been discriminated against as defined in [Section 451] may
bring an action for compensatory and punitive damages." By way
of context, prior to 2011, courts in the Virgin Islands had
consistently held that Section 451 did not provide a private
cause of action. *See, e.g.*, *Miller v. Virgin Islands Hous.
Auth.*, No. CIV. 1998/0089, 2005 WL 1353395, at *4 (D.V.I. June
3, 2005). In this light, it is clear that the Legislature
intended to overrule that line of cases in order to expand the
rights of and protections afforded to employees. Indeed, the
entire tenor of the Act is one of an expansion of employee
rights. In addition to creating a private cause of action, Act

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 20

7323 provided for an award of attorney fees and costs *only* for prevailing plaintiffs. The Act also eliminate a restriction in the definition of "because of sex" and "as to sex" that limited an employer's obligation to pay for health insurance benefits for abortion.

The publisher's interpretation of Act Number 7323 would create a statute that provided a remedy for "any person who has been discriminated against *as defined in this section*" with no corresponding definition of "discrimination." An amendment clearly intended to expand an employee's rights under the statute would thus have had the absurd result of entirely eliminating that right. Such a result is untenable, and it is inconsistent with the Virgin Islands Supreme Court's practice in interpreting statutes. *See Sonson v. People*, No. S.CT.CRIM. 2009-0109, 2013 WL 4812493, at *4 (V.I. Sept. 9, 2013) ("Importantly, this Court will construe the statute sensibly and avoid interpretations which would yield absurd results."); *Brady v. Gov't of the Virgin Islands*, No. S.CT.CIV. 2011-0096, 2012 WL 4098172, at *4 (V.I. Sept. 18, 2012) ("We recognize that statutes should not be construed and applied in such a way that would result in injustice or absurd consequences."). (internal quotation marks omitted).

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 21

Accordingly, the Court holds that Act 7323 left Section 451's definition of discrimination in the original subsection "(a)" undisturbed. Because the currently codified version of Section 451 is inconsistent with Act 7323, Act 7323 therefore controls. *Cf. Nashville Milk Co.*, 355 U.S. at 378-80 (holding that Statute at Large controlled over inconsistent U.S. Code provision); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 489-90 (7th Cir. 1990) (holding that Statute at Large controlled over inconsistent U.S. Code provision where had Congress enacted revised Code into positive law but provided that revisions were technical, not substantive). Without passing on the appropriate designations of Section 451's subsections, the Court holds that the prohibitions against discrimination in the current version of Section 451 are coextensive with those in the pre-2011 amendment version. Accordingly, Section 451 continues to provide that

> it shall be unlawful employment practice or unlawful discrimination:
>
> (1) For an employer to refuse to hire or employ or to bar or discharge from employment, any individual because of his race, sex, age, religion, color or ancestry, provided that an employer may refuse to hire an individual for good cause relating to the ability of the individual to perform the work in question;
>
> (2) For an employer to discriminate against any individual in compensation or in the terms,

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 22

> conditions, or privileges of employment because
> of race, sex, age, religion, color or ancestry;
>
> (3) For any employer or employment agency to
> print, circulate or cause to be printed or
> circulated any statement, advertisement or
> publication or to use any form of application for
> employment or to make inquiry in connection with
> prospective employment, which expresses, directly
> or indirectly, any limitations, specification or
> discrimination as to race, sex, age, religion,
> color or ancestry, unless based on a bona fide
> occupational qualification as determined by this
> chapter.

24 V.I.C. § 451(a) (2010).

Therefore, a cause of action for discrimination based on pregnancy, childbirth, or related medical conditions is available pursuant to Section 451. The Court will interpret Counts Three, Four, and Five as asserting local claims under that statute.

### c. Analytical Approach for Applying 24 V.I.C. § 451

In Counts Three, Four, and Five, Mercer alleges violations of local and federal statutes that proscribe pregnancy and pregnancy-related discrimination. Having determined that Mercer's local claims are properly brought under Section 451, the Court must determine whether claims brought under Section 451 may be analyzed consistent with the analytical approach undertaken with federal claims brought under Title VII.

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 23

Neither party has contended in any filing or at trial that the local claims should be analyzed differently than the federal claims. Under these circumstances, this Court has applied the same standards when analyzing violations of Title VII and local civil rights statutes. *See, e.g., Haynes-Ross v. Hovensa L.L.C.*, No. CV 12-74, 2015 WL 1882873, at *2 (D.V.I. Apr. 23, 2015); *Mendez v. Puerto Rican Int'l Companies, Inc.*, No. 05-199, 2013 WL 5587253, at *14 (D.V.I. Oct. 9, 2013); *Galloway v. Islands Mech. Contractor, Inc.*, No. 2008-071, 2012 WL 3984891, at *15 (D.V.I. Sept. 11, 2012); *Desir v. Hovensa, L.L.C.*, No. CIVIL 2007/97, 2012 WL 762122, at *6 (D.V.I. Mar. 7, 2012).

Recently, the Virgin Islands Supreme Court indicated a reluctance to incorporate federal caselaw interpreting the federal Civil Rights Act into its interpretation of local civil rights law. *See Rennie v. Hess Oil Virgin Islands Corp.*, No. S.CT.CIV. 2014-0028, 2015 WL 525941, at *12 (V.I. Feb. 6, 2015). In *Rennie v. Hess Oil Virgin Islands Corporation*, the Virgin Islands Supreme Court, interpreting Section 3, declined to "graft[] the McDonnell Douglas pleading framework onto the Virgin Islands Civil Rights Act." *Id.*  It reasoned that applying federal caselaw interpreting the federal Civil Rights Act was inappropriate because:

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 24

> the Virgin Islands Civil Rights Act, in addition to
> being significantly broader in scope than the
> federal Civil Rights Act, is one of the original
> provisions of the Virgin Islands Code that went into
> effect on September 1, 1957, and thus predates the
> adoption of the federal Civil Rights Act--originally
> enacted by Congress in 1964--by nearly a decade.

*Id.* at *11.

The Virgin Islands Supreme Court's rationale for rejecting the application of federal caselaw to Section 3 pleading does not necessarily compel the same conclusion with respect to assessing the *merits* of a claim brought under Section 451.

First, in *Rennie*, the *pleading* framework was at issue. Here, the Court's focus is on the evidence.

Second, unlike the provisions in Section 3, the wording of the relevant provisions in Section 451 is very similar to the wording of the relevant provisions in Title VII.  Indeed, Section 451(b)(2) is materially identical to the definition of "because of sex" or "on the basis of sex" found in 42 U.S.C. § 2000e(k).  Compare 42 U.S.C.A. § 2000e ("The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but

similar in their ability or inability to work, and nothing in
section 2000e-2(h) of this title shall be interpreted to permit
otherwise.") *with* Section 451(b) ("[T]he terms 'because of sex'
or 'as to sex' include, but are not limited to: (1)  because of
sexual harassment[;] and[] (2)  because of or as to pregnancy,
childbirth, or related medical conditions; and women affected by
pregnancy, childbirth, or related medical conditions shall be
treated the same for all employment-related purposes, including
receipt of benefits under disability benefit, sick leave, and
medical benefit programs, as other persons not so affected but
similar in their ability or inability to work, and nothing in
section 460 of this chapter pertaining to bona fide occupational
classifications shall be interpreted to permit otherwise.").

Moreover, the same temporal disconnect between the federal
and local statute does not exist. Section 451 was originally
passed on April 8, 1964. *See* Act No. 1192, Sess. L. 1964 (April
8, 1964). The Civil Rights Act of 1964 was passed on July 2,
1964. See Pub. L. 88-352, 78 Stat. 241 (July 2, 1964). Although,
strictly speaking, Section 451 predates the Civil Rights Act of
1964, it predates it by only a few months. Moreover, when
Section 451 was passed, the United States House of
Representatives had already passed its version of the Civil

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 26

Rights Act of 1964. *See Mohasco Corp. v. Silver*, 447 U.S. 807, 819 (1980).

Finally, the plain language of the statute counsels this approach. "Congress did not intend by Title VII . . . to guarantee a job to every person regardless of qualifications," but rather "the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discrimination on the basis of . . . [an] impermissible classification*." McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973) (internal quotation marks omitted). The "major purpose" of Title VII was "to eliminate the most obvious, lawful reasons for [a] defendant's action[s]." *Pivirotto*, 191 F.3d at 352. By specifically providing in Section 451 "that an employer may refuse to hire an individual for good cause relating to the ability of the individual to perform the work in question," 24 V.I.C. § 431(a) (2010), it is apparent that the same approach was intended by the Virgin Islands legislature.

Therefore, in the absence of caselaw interpreting these very similarly worded statutes differently, the Court considers federal caselaw assessing the merits of claims filed pursuant to 42 U.S.C. § 2000e-2(a)(1) to be, while not controlling, of persuasive value in its assessment of the merits of claims

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 27

brought pursuant to Section 451. As such, the Court will analyze the federal and state claims together.

### 2. Merits

Counts Three, Four, and Five all allege disparate treatment based on pregnancy/pregnancy-related medical conditions. Disparate treatment is effected by: (1) severe or pervasive harassment giving rise to a hostile work environment; or (2) an adverse tangible employment decision resulting in a significant change in employment status. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54, 118 S. Ct. 2257, 2265, 141 L. Ed. 2d 633 (1998).  An adverse tangible employment decision "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761.

In the context of pregnancy discrimination claims, pregnant women and women affected by pregnancy-related medical condition are only entitled to the same treatment as "other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). As such, when a woman who is pregnant or suffering from a pregnancy-related medical condition is treated in a certain manner based on her absence from work, such treatment is only prohibited if pregnant women are treated

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 28

differently from other individuals similarly absent from work.

*See In re Carnegie Ctr. Associates*, 129 F.3d 290, 296 (3d Cir. 1997); *see also Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 738 (7th Cir. 1994) ("The Pregnancy Discrimination Act requires the employer to ignore an employee's pregnancy, but . . . not her absence from work, unless the employer overlooks the comparable absences of nonpregnant employees—in which event it would not be ignoring pregnancy after all." (citations omitted)).

A plaintiff alleging illegal discrimination may prove her case by adducing direct or indirect evidence of discrimination.

Here, Mercer has produced no direct evidence of discrimination. As such, the Court must determine whether Mercer has produced sufficient indirect evidence to carry her burden.

> [A]n individual pregnant worker who seeks to show disparate treatment through indirect evidence may do so through application of the McDonnell Douglas framework. That framework requires a plaintiff to make out a prima facie case of discrimination. . . . [A]n individual plaintiff may establish a prima facie case by 'showing actions taken by the employer from which on can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under' Title VII.

*Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1354-55 (2015) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575 (1978) (citations omitted).

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 29

From Mercer's complaint, the Court identifies four
potential tangible adverse employment actions: (1) the denial of
accommodations after childbirth; (2) the significant reduction
in Mercer's responsibilities; (3) the threat to terminate
Mercer's employment; and (4) the termination of her employment.

### a. Accommodations

> [A] plaintiff alleging that the denial of an
> accommodation constituted disparate treatment under
> the Pregnancy Discrimination Act's second clause may
> make out a prima facie case by showing, as in
> *McDonnell Douglas*, that she belongs to the protected
> class, that she sought accommodation, that the
> employer did not accommodate her, and that the
> employer did accommodate others "similar in their
> ability or inability to work."

*Young*, 135 S. Ct. at 1354-55.

Mercer attempts to satisfy her burden by adducing evidence
that she, herself, was permitted reasonable accommodations while
pregnant, but was not subsequently permitted reasonable
accommodations while suffering from a pregnancy-related medical
condition.

Essentially, Mercer is arguing that discrimination based on
sex includes situations where an employer provides more
favorable treatment to a pregnant person than to a person
suffering from a pregnancy-related medical condition. Such a
contention is not intuitive and requires further analysis.

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 30

The requirement that the employee provide evidence "that the employer did accommodate others 'similar in their ability or inability to work'" tracks the language in the Pregnancy Discrimination Act and was adopted to properly incorporate the terms of the Pregnancy Discrimination Act into the *McDonnell Douglas* framework. As such, the proper interpretation of the Pregnancy Discrimination Act determines the proper interpretation of this prong of the *McDonnell Douglas prima facie* case.

The Pregnancy Discrimination Act provides, in relevant part, that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . ." 42 U.S.C. § 2000e(k). Conceivably, this statute could be interpreted in two ways: (1) "other persons not so affected" means other persons not affected by pregnancy or other persons not affected by childbirth or other persons not affected by related medical conditions depending on whether a woman is affected by pregnancy, childbirth, or a related medical condition; or (2) "other persons not so affected" means persons who are not women affected by pregnancy, childbirth, or related medical

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 31

conditions. Mercer's contention is consistent with the former, but inconsistent with the latter.

The plain language of the statutory definition and the corresponding legislative history clearly indicates Congress' intention was that the Pregnancy Discrimination Act provide that discrimination based on pregnancy constituted discrimination based on sex, despite Supreme Court precedent to the contrary. *See, e.g.*, *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 678-79 (1983). Both interpretations of this statute would provide for that outcome.

Under the former interpretation, however, there would be an additional disincentive for an employer to provide any preferential benefits to women who are pregnant or have a pregnancy-related medical condition because that preferential treatment could not only be provided to women affected by pregnancy or women affected by childbirth or women affected by related medical conditions. There is no indication of any such intention in the relevant legislative history. Moreover, the Court sees no reason to impute such an intention on Congress. As such, the Court finds the latter interpretation to be more plausible and holds that "other person not so affected" means persons who are not women affected by pregnancy, childbirth, or related medical conditions. Therefore, because a plaintiff

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 32

bringing a claim under the Pregnancy Discrimination Act must show that she was treated differently than other persons similar in their ability or inability to work, evidence demonstrating the treatment of women affected by pregnancy, childbirth, or related medical conditions is irrelevant.

Mercer's evidence relating to reasonable accommodations provided while pregnant therefore does not satisfy her burden with respect to the denial of reasonable accommodations while suffering from a pregnancy-related medical condition. As such, Mercer has not submitted sufficient evidence demonstrating that the refusal to provide accommodations was based on sex.

### b. Other Adverse Employment Actions

In *Young v. United Parcel Service*, 135 S. Ct. at 1354-55, the Supreme Court explained that, in a denial of an accommodation case, a plaintiff must show that her "employer did not accommodate her, and that [her] employer did accommodate others 'similar in their ability or inability to work.'" From that holding, it follows that holding that a woman suffering from a pregnancy related medical condition who faced other adverse tangible employment actions must also show that similar action was not taken against others similar in their ability or inability to work. Mercer has failed to provide any evidence

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 33

showing the treatment of other employees similar in their ability or inability to work.

### c. Hostile Work Environment

> To establish a prima facie case of hostile work environment, appellant must show that (1) she suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person in the same position; and (5) the existence of respondeat superior liability.

*Sherrod v. Philadelphia Gas Works*, 57 F. App'x 68, 75 (3d Cir. 2003).

None of the conduct directed at Mercer was explicitly based on her pregnancy or pregnancy-related medical condition. Nevertheless, conduct that is not explicitly pregnancy-based may be illegally pregnancy-based and properly considered in a hostile work environment analysis when it can be shown that but for the employee's pregnancy or pregnancy-related medical condition, she would not have been the object of harassment. *Cf. Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007) (holding the same with respect to facially neutral racial discrimination). Although there is no direct evidence that the discrimination results from membership in a specific class, the *McDonnell Douglas* burden shifting approach also applies to hostile work environment claims. *Lounds v. Lincare, Inc.*, No.

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 34

14-3158, 2015 WL 9299074, at *10-*11 (10th Cir. Dec. 22, 2015);
*Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir.
2007); *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir.
2004); Kaszynski v. Thompson, 83 F. App'x 526, 528 (4th Cir.
2003).

As previously noted, to show that discrimination was based
on pregnancy or a pregnancy-related medical condition under
McDonnell Douglas, the plaintiff must provide evidence of other
employees similar in their ability to work. *See Young*, 135 S.
Ct. at 1354-55. Mercer has failed to produce any such evidence.
As such, Mercer has failed to produce evidence establishing a
*prima facie* case for hostile work place pregnancy
discrimination.

Accordingly, the Court will enter judgment in favor of the
DOE Defendants on Counts Three, Four, and Five.

**D. Count Six: Wrongful Termination**

Count Six alleges a claim for wrongful termination in
violation of 24 V.I.C. § 361, *et seq.* Nevertheless, in her
filings with the Court, Mercer indicated that the citation to 24
V.I.C. § 361, *et seq.* was a scrivener's error. On that basis,
she "request[ed] leave to amend the First Amended Complaint to
correct the citation to title 24, section 76 of the Virgin
Islands Code." (ECF No. 15, at 16.) At trial, Mercer no longer

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 35

contended that Count Six alleged a violation of 24 V.I.C. § 361, *et seq.* or 24 V.I.C. § 76. Instead, her counsel merely contended that "[i]f she cannot pursue her claim under Section 76 because she's a public employee, then she can surely continue to pursue her claim under . . . Chapter 24." ECF 74-1, at 208:13-16. Counsel never identified any provision of Virgin Islands law that permitted such a claim.

Accordingly, the Court will determine whether Mercer is entitled to judgment on either a claim asserted under 24 V.I.C. § 361, *et seq.* or a claim asserted under 24 V.I.C. § 76.

**1. 24 V.I.C. § 361, *et seq.***

24 V.I.C. § 363 provides that

> [s]ubject to the provisions of this chapter, public employees shall have and do have the right to:
>
>> (a) form, join, assist and participate in, or to refrain from forming, joining, assisting or participating in any labor organization of their choosing;
>>
>> (b) be represented by labor organizations and to engage in collective bargaining with the Government in the determination of the wages, hours, or other terms and conditions of employment and the administration of grievances arising thereunder;
>>
>> (c) engage in lawful, concerted activities to enhance their collective bargaining position and promote their mutual well-being and protection, without interference, restraint, or coercion; and

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 36

> (d) elect individually in writing, to have
> deducted from their payroll checks an
> amount for union dues, payment-in-lieu of
> dues, group insurance premiums, and other
> expenses of the services or benefits
> provided by the exclusive representative
> and incorporated in the collective
> bargaining agreement.

24 V.I.C. § 363.

At trial, Mercer produced no evidence that any of these enumerated rights had been violated.[2] Therefore, to the extent the Court construes Count Six to assert a violation of 24 V.I.C. § 361, *et seq.*, the DOE defendants are entitled to judgment in their favor.

### 2. 24 V.I.C. § 76

Construing Count Six to allege a violation of § 76 yields a similar outcome. Section 76 forbids the discharge of employees except on certain enumerated grounds. See 24 V.I.C. § 76. Significantly, however, the term "employee" as used in that section does not include an individual employed by a "public employer" as defined in chapter 14 of Title 24 of the Virgin Islands Code.  24 V.I.C. § 62. There, a public employer is defined, in pertinent part, "as the executive branch of the

---

[2] Indeed, during argument, Mercer's counsel conceded that "Mercer was not unionized." ECF 74-1, at 216:18.

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 37

Government of the United States Virgin Islands and any agency or instrumentality thereof." See 24 V.I.C. § 362.

Mercer's claims are against her former employer--the DOE--and her former supervisors at the DOE. (Amended Complaint, ECF No. 10, at ¶ 11-12.) The DOE is indisputably part of the Government of the United States Virgin Islands. As such, by its terms, § 76 does not apply. See 24 V.I.C. § 362. Therefore, to the extent the Court construes Count Six to assert a violation of 24 V.I.C. § 76 the defendants are entitled to judgment in their favor.

Because the defendants are entitled to judgment in their favor if the Court construes Count Six to assert a violation of 24 V.I.C. § 361, et seq. or 24 V.I.C. § 76, the Court will enter judgment in favor of the defendants on Count Six.

### E. Count Seven: Negligent Infliction of Emotional Distress

This Court has consistently used two tests for claims of negligent infliction of emotional distress under different circumstances. The first test requires (1) that "the negligent conduct . . . placed the plaintiff in danger of his or her own safety; and (2) that "the plaintiff . . . suffered some physical harm as a result of the emotional distress." *See, e.g.*, *Fenton v. C & C Const. & Maint., Inc.*, No. SX-96-CV-791, 2007 WL 1202867, at *6 (V.I. Super. Apr. 4, 2007). This test derives

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 38

from Sections 436 and 436A of the Restatement (Second) of Torts,
*see Mingolla v. Minnesota Min. & Mfg. Co.*, 893 F. Supp. 499, 506
(D.V.I. 1995), which address situations where an "act [is]
negligent because otherwise threatening bodily harm results in
the harm solely through the effect of the actor's conduct upon
the mind or emotions of the other." Restatement (Second) of
Torts §§ 313 cmt. b (1965); *see also id.* at § 436 cmt. b.

In contrast, the second test--which derives from Section
313 of the Restatement (Second) of Torts--addresses situations,
like here, where bodily harm is not threatened. *See Berrios v.
Hovic*, No. 05-CV-192-F, 2010 WL 3069480, at *9 (D.V.I. July 29,
2010); *see also* Restatement (Second) of Torts § 313 cmts. b-c.
Under those circumstances, Section 313 provides that

> [i]f the actor "unintentionally causes emotional
> distress to another, he is subject to liability to
> the other for resulting illness or bodily harm if
> the actor
>
> (a) should have realized that his conduct involved
> an unreasonable risk of causing the distress,
> otherwise than by knowledge of the harm or peril of
> a third person, and
>
> (b) from facts known to him should have realized that
> the distress, if it were caused, might result in
> illness or bodily harm.

Restatement (Second) of Torts § 313. "Thus there are two
elements required for a negligent infliction of emotional

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 39

distress claim: physical injury and foreseeability." *Berrios*, 2010 WL 3069480, at *9 (citing *Berry v. Jacobs IMC, LLC,* 99 Fed. Appx. 405, 410 (3d Cir.2004); *Anderson v. Government of Virgin Islands,* 180 F.R.D. 284, 287 (D.V.I.1998)).

The physical injury element of negligent infliction of emotion injury claim is a high bar. This Court has explained that "evidence of shock, mental anguish, and depression [are] insufficient to show physical harm for purposes of negligent infliction of emotional distress under Virgin Islands law. *Cohler v. U.S. ex rel. Nat. Park Servs.*, No. CIV. 2005-29, 2008 WL 2563768, at *4 (D.V.I. June 24, 2008). Likewise, evidence of "mental anguish, emotional distress, pain and suffering, depression, anxiety, fear for [one's] father's life, fear of losing [one's] father, loss of enjoyment of life, great sadness, insomnia, nightmares, and flashbacks" do not suffice. *Id.* (internal quotation marks and original alterations omitted).

Considering a claim under a Pennsylvania law that similarly requires physical injury to recover for negligent infliction of emotional distress, the Third Circuit determined that "decades of emotional distress in the form of worry, headaches, chest pains, arm numbness, and lack of sleep" were insufficient to qualify as physical injuries. *Mest v. Cabot Corp.*, 449 F.3d 502, 519 (3d Cir. 2006). Other courts interpreting similar state laws

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 40

have given the physical injury requirement a similarly
restrictive interpretation. See, e.g., *See Elliott v. Elliot,* 58
So.3d 878, 882 (Fla.Dist.Ct.App.2011) (holding that headaches,
diabetes, sleep apnea, stress, insomnia, loss of appetite, hair
loss, and bowel trouble, were insufficient "injuries" to support
a claim for negligent infliction of emotional distress);
*Reynolds v. Highland Manor, Inc.*, 954 P.2d 11, 14 (Kan. Ct. App.
1998) ("Physical symptoms of emotional distress such as
headaches, insomnia, and general physical upset are insufficient
to state a cause of action."); *Brown v. Chiappetta*, 806 F. Supp.
2d 1108, 1120 (D. Minn. 2011); ("Brown's weight and hair loss,
depression, sense of betrayal and stress are not sufficiently
severe to meet the physical manifestation requirement.");
*Carraway v. Cracker Barrel Old Country Store, Inc.*, No.
CIV.A.02-2237-KHV, 2003 WL 21685909, at *15 (D. Kan. July 16,
2003) (explaining that "hair loss and weight fluctuations . . .
would not constitute sufficient physical injury to support a
claim for negligent infliction of emotional distress"); *Weathers
v. Am. Family Mut. Ins. Co.*, No. CIV. A. 87-2557-O, 1990 WL
254975, at *3 (D. Kan. Dec. 11, 1990) (holding that "weight
loss, skin rashes, and hair loss" were not sufficient physical
symptoms to support negligent infliction of emotional distress
claim).

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 41

Mercer testified that she suffered frequent, painful headaches as a result of the stress she suffered at work and that she "start[ed] to get anxiety attacks," which she had to learn to control with breathing exercises. Mercer also testified that she was losing some hair, and her husband testified that "she was barely sleeping at night." Weight loss, headaches, anxiety attacks, and even hair loss are insufficient physical injuries to satisfy the physical injury requirement. Accordingly, the DOE Defendants are entitled to judgment on Count Seven.

## F. Count Eight: Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, the plaintiff must allege that the defendant, by her extreme and outrageous conduct, intentionally or recklessly caused the plaintiff severe emotional distress. *See* Restatement (Second) of Torts § 46 (1965); *see also Manns v. Leather Shop Inc.,* 960 F.Supp. 925, 930-31 (D.V.I. 1997). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in civilized society." Restatement (Second) of Torts § 46, cmt. d; *see also Cox v. Keystone Carbon Co.,* 861 F.2d 390 (3d Cir. 1988); *Moolenaar v. Atlas Motor Inns, Inc.,* 616 F.2d 87 (3d Cir. 1980).

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 42

As the United States Court of Appeals for the Third Circuit has explained, "[i]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox,* 861 F.2d at 395 (citations omitted). Yet, allegations of a continuous pattern of intolerable conduct may support a claim for intentional infliction of emotional distress in the employment context. *See, e.g., Porta v. Rollins Environmental Servs. (NJ), Inc.,* 654 F.Supp. 1275, (D.N.J.1987) *aff'd,* 845 F.2d 1014 (3d Cir.1988); *Calkins v. Dollarland, Inc.,* 117 F.Supp.2d 421, 432 (D.N.J.2000).

After Mercer presented her evidence in this case, the DOE moved for a directed verdict pursuant to Federal Rule of Civil Procedure 50. The Court concluded that a reasonable jury could not have concluded that the conduct described was sufficiently outrageous to justify a claim for intentional infliction of emotional distress. *Accord Rouse v. II-VI, Inc.*, 2007 U.S. Dist. LEXIS 23679 (W.D. Pa. Mar. 30, 2007) (dismissing a claim for intentional infliction of emotional distress (1) discriminating against him on the basis of race and age, (2) staging poor reviews of his work, (3) causing him anxiety by refusing to meet with him, (4) telling all other employees when Plaintiff would

*Mercer v. Gov't of the Virgin Islands, et. al.*
Civ. No. 2014-50
Memorandum Opinion
Page 43

be dismissed, (5) having Plaintiff escorted from the building, (6) not inviting Plaintiff to weekly meetings.) On that basis, the Court granted the DOE Defendants' motion and entered judgment in favor defendants on Count Eight.

### III. CONCLUSIONS

For the reasons explained above, the Court will enter judgment in favor of the DOE Defendants on all counts. An appropriate judgment accompanies this memorandum opinion.